IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEBORAH P. O'NEILL,
        Plaintiff,

v.                                  Case No. 2:04-CV-1135
                                     JUDGE EDMUND A. SARGUS, JR.
                                     Magistrate Judge Norah McCann King

KEMPER INSURANCE COMPANIES, et al.,
        Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of the Plaintiff's Motion for Partial Summary Judgment (Doc. #11) and the Defendants' Motion for Summary Judgment (Doc. #15). For the reasons that follow, the Plaintiff's motion is denied and the Defendants' motion is granted.

**I.**

Plaintiff, Deborah P. O'Neill ["Plaintiff"], brings this action against Kemper Insurance Companies and Lumbermen's Mutual Casualty Company ["Defendants"] seeking declaratory judgment as to the issue of reimbursement for attorneys' fees, costs and expenses under a policy of professional liability insurance. Plaintiff also asserts claims for breach of contract, bad faith, and promissory estoppel under Ohio law. The Defendants are Illinois corporations and the Plaintiff is a resident of the State of Ohio. The amount in controversy exceeds $75,000 exclusive of interest and costs. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

This action arises as a result of proceedings before the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline. Plaintiff held the position of Common Pleas

Judge for Franklin County, Ohio from 1992 to 2004. (*Complaint* at ¶ 2). On January 19, 2001, the Office of Disciplinary Counsel for the Ohio Supreme Court sent a Letter of Inquiry to Plaintiff regarding forty-four (44) alleged instances of judicial misconduct. (*Id.* at ¶ 12). The law firm of Bieser, Greer & Landis, LLP was retained to represent Plaintiff in the disciplinary matter. (*Id.* at ¶ 13). Plaintiff, through counsel, responded to the January 19, 2001 letter. (*Id.* at ¶ 14). On June 14, 2001, the Disciplinary Counsel issued a second Letter of Inquiry setting forth an additional five (5) alleged instances of judicial misconduct. (*Id.* at ¶ 15). Plaintiff's counsel responded to the second letter on July 25, 2001. (*Id.* at ¶ 16). A Draft Complaint was issued to Plaintiff on March 8, 2002 and Plaintiff responded on May 23, 2002. (*Id.* at ¶¶ 17-18). Revisions to the complaint were made in May 2002 and a formal Complaint was filed with the Board of Commissioners on Grievances and Discipline on June 18, 2002. (*Id.* at ¶ 21). Plaintiff filed a formal response to the Complaint on July 8, 2002. (*Id.* at ¶ 22). A third Letter of Inquiry was issued on July 23, 2002, setting forth additional instances of alleged judicial misconduct. (*Id.* at ¶ 23). An Amended Complaint was filed on November 20, 2002 with the Board of Commissioners on Grievances and Discipline.

The Amended Complaint was comprised of six counts and fifty-five (55) instances of alleged misconduct. (*Id.* at ¶ 25). Count I charged Plaintiff with improper *ex parte* communications, failure to appropriately exercise judicial discretion and failure to follow the law. Count II charged Plaintiff with improper refusal to allow attorneys to preserve objections on the record. Count III charged Plaintiff with improper denial of continuances without the exercise of judicial discretion. Count IV charged Plaintiff with making misrepresentations to lawyers, judges and court personnel in the course of her duties. Count V charged Plaintiff with

committing acts demonstrating judicial intemperance. Count VI charged Plaintiff with improper use of county resources and personnel for her 2002 campaign for a seat on the Franklin County Court of Appeals. Plaintiff responded to the Amended Complaint on January 15, 2003. (*Id.* at ¶ 26). A hearing on the allegations contained in the Amended Complaint was conducted over a nineteen day period and included the testimony of over one hundred witnesses. (*Id.* at ¶ 27).

The Board of Commissioners on Grievances and Discipline found against Plaintiff on four of the six counts[1] and suspended Plaintiff's license to practice law in the State of Ohio for two years. The matter was later heard by the Ohio Supreme Court. On September 7, 2004, the Ohio Supreme Court affirmed the findings made by the Board and suspended Plaintiff's license to practice law for two years with one year stayed, on certain conditions. *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204 (2004).

Throughout the disciplinary proceedings, Plaintiff was represented by David Greer, of the firm Bieser, Greer & Landis, LLP, in Dayton, Ohio. Greer's hourly rate was $175.00. The total charges for representing Plaintiff were in excess of $580,000.00[2]. In her capacity as a Franklin County Common Pleas Judge, Plaintiff was covered by a policy of insurance issued by Defendants. The policy provides, in pertinent part:

> A. WHAT WE COVER
> Subject to all terms and conditions of this policy, we will pay on your behalf all damages and claim expenses arising out of a claim which you first become aware of and you report to us in writing during the policy period.
>
> B. DEFENSE AND SETTLEMENT

---

[1] As to Counts II and III, there were findings of no misconduct.

[2] One issue not before the Court is the reasonableness of the attorneys' fees sought. The Court notes in passing that Attorney David Greer is a highly respected member of the bar of this Court.

3

> We will provide for the defense of claims against you that are covered by this policy even if the allegations against you are groundless, false or fraudulent.
>
> We will not settle any claim without your consent. However, you must communicate to us, within a reasonable period of time, your consent or objection to any claim settlement which we propose to make. If you object to any claim settlement we propose to make, you and we will, within 15 days of your objection, present our respective positions to an arbitrator selected by the Supreme Court and be guided by his opinion regarding the claim settlement.
>
>          \*         \*         \*
>
> D. DEFINITIONS
> Whenever used in this policy, the term;
> 1. **Claim** means:
> a. Any demand received by you for money arising out of your acts, errors or omissions in your judicial, ministerial, administrative or managerial capacity; or
>
> b. Any allegations against you brought by an official disciplinary committee, judicial competence committee or other similar official committee of inquiry in disciplinary procedures.

(Exhibit 1 attached to *Complaint* at 2).

> Section D.1.b was replaced by the following endorsement:
>
> By this endorsement you and we agree that policy provision D.1.b is deleted in its entirety and replaced by the following:
>
> b. Any allegations against you brought by an official disciplinary committee, judicial competence committee or other similar official committee of inquiry in disciplinary procedures, in connection with any such proceedings, <u>our obligation under this policy is limited to reimbursing you for attorneys' fees and other reasonable costs</u>, expenses or fees resulting from the investigation or defense of any such proceeding and then <u>only in the event the allegations brought against you are dismissed or discontinued without a finding of fault or guilt on your part</u>.
>
> All other terms and conditions of this policy remain unchanged.

(*Id.* at 13) (emphasis added).

4

Plaintiff seeks reimbursement for attorneys' fees under the Defendants' policy. Plaintiff moves for partial summary judgment in this regard on her claim for breach of contract. The Defendants oppose the motion and move for summary judgment as to all claims alleged in the Complaint.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-159 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronics Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby*, *Celotex*, and *Matshushita* have effected "a decided change in summary judgment practice," ushering in a new era in summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1476 (6th Cir. 1989). The Court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Id.* (*quoting Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

Plaintiff seeks reimbursement for attorneys' fees incurred in connection with the disciplinary proceedings against her. As stated above, the Board of Commissioners on Grievances and Discipline found against Plaintiff on four of the six counts charged and the Ohio Supreme Court suspended Plaintiff's license to practice law in the State of Ohio for two years with one year stayed, on certain conditions. According to Plaintiff, since she was not disciplined on all six counts, reimbursement is not precluded by section D.1.b. Defendants disagree, noting

that the plain language of the contract allows for reimbursement "only in the event the allegations brought against you are dismissed or discontinued without a finding of fault or guilt on your part." (Section D.1.b, Exhibit 1 attached to *Complaint* at 13).

In moving for partial summary judgment, Plaintiff argues that because section D.1.b uses the term "allegations" and not "complaint," each count against her must be viewed separately. Plaintiff contends that because certain counts were dismissed she is at least entitled to reimbursement for a portion of the attorneys' fees incurred[3]. As an alternative argument, Plaintiff contends that the policy is ambiguous and should be liberally construed in her favor. Plaintiff also argues that Defendants should be estopped from denying her reimbursement for attorneys' fees because they allegedly did not reserve their right to deny coverage. Finally, Plaintiff argues that Defendant Kemper's interest in the outcome of the disciplinary proceedings gives rise to a conflict of interest and constitutes a breach of contract.

In their motion for summary judgment, Defendants argue that the terms of the policy are clear and unambiguous. Defendants maintain that they are not obligated to reimburse Plaintiff for attorneys' fees. Defendants further contend that since coverage under the policy does not exist, Plaintiff's alleged claims for breach of contract on the part of Kemper, bad faith, and promissory estoppel are without merit.

---

[3] In this regard, Plaintiff argues that 72% of the allegations against her were dismissed so she should be able to recover 72% of her attorneys' fees. It is unclear to the Court how Plaintiff calculates this percentage since she was found to be in violation on four out of the six disciplinary counts brought against her. In any event, as discussed *infra*, calculating the level of success or failure is an exercise in futility in this Court's view since the contract is quite clear as to when reimbursement for attorneys' fees is permitted.

7

An insurance policy is a written contract and, as a result, its terms determine the parties' intent as to coverage. *Minor v. Allstate Ins. Co., Inc.*, 111 Ohio App.3d 16, 19 (1996). In construing the terms of an insurance policy, words are to be given their plain and ordinary meaning. Only where the terms are ambiguous should the policy be liberally construed in favor of coverage. *Dairyland Ins. Co. v. Finch*, 32 Ohio St.3d 360, 362 (1987). Under Ohio law, a policy exclusion precluding coverage "must be stated clearly in explicit wording setting forth with specificity exactly what is to be excluded." *River Servs. Co. v. Hartford Accident & Indem. Co.*, 449 F.Supp. 622, 626 (N.D. Ohio 1977) (citation omitted). "'The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect.'" *LaValley v. Virginia Surety Co.*, 85 F.Supp.2d 740, 744 (N.D. Ohio 2000), quoting *Lane v. Grange Mut. Cos.*, 45 Ohio St.3d 63, 65 (1989). As with any contract, an insurance policy is to be given a reasonable construction in order to ascertain the intent of the parties. *Sentry Life Ins. Co. v. Lustgarten*, 603 F.Supp. 509, 511 (S.D. Ohio 1984) (Rice, J.).

The Court finds the policy in this case clear and unambiguous. The policy clearly defines "claim" to include:

> Any allegations against you brought by an official disciplinary committee, judicial competence committee or other similar official committee of inquiry in disciplinary procedures, in connection with any such proceedings, our obligation under this policy is limited to reimbursing you for attorneys' fees and other reasonable costs, expenses or fees resulting from the investigation or defense of any such proceeding and then *only in the event the allegations brought against you are dismissed or discontinued without a finding of fault or guilt on your part.*

(Exhibit 1 attached to *Complaint* at 13) (emphasis added).

Plaintiff does not dispute that the proceedings before the Ohio Board of Commissioners on Grievances and Discipline resulted in a finding of fault on her part. Thus, under the plain language of the policy, Defendants are not obligated to pay reimbursement for Plaintiff's attorneys' fees. The policy clearly states that reimbursement occurs *only* in the absence of a finding of fault or guilt. The Court rejects Plaintiff's argument that the policy is ambiguous[4].

Plaintiff's argument that she should be reimbursed for a portion of the fees because two of the six counts lodged against her were dismissed is unsupported by the plain language of the policy. "Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication, so as to embrace an object distinct from that originally contemplated by the parties." *Sentry Life Ins. Co. v. Lustgarten*, 603 F.Supp. 509, 511 (S.D. Ohio 1984) (Rice, J.), citing *Rhoades v. Equitable Life Assurance Society*, 54 Ohio St.2d 45 (1978). The policy simply does not support Plaintiff's argument that she should be reimbursed for fees on the counts which the Board of Commissioners on Grievances and Discipline dismissed[5].

---

[4]Indeed, the lack of ambiguity is evidenced in Attorney David Greer's letter of January 24, 2001 after being retained by Kemper to represent Plaintiff. The letter states, in pertinent part:

> This will confirm that Kemper Professionals has retained me to represent Judge O'Neill in the matter at an hourly rate of $175/hour with the understanding that the policy provides coverage in disciplinary matters only when they come to a conclusion favorable to the judge who is required to defend against the charge. Judge O'Neill understands that if this matter proceeds through a formal grievance which is resolved against her, she will be responsible for my fees. She also understands that if we can work the matter out informally with Disciplinary Counsel, even if some concessions are required of her, Kemper Professionals will in all likelihood take car of her attorney fee expenses.

(Exhibit A attached to *Plaintiff's Motion for Summary Judgment*).

[5]The Court disagrees with Plaintiff's argument that use of the word "allegations" in section D.1.b supports a partial reimbursement of attorneys' fees under the policy.

In addition, Plaintiff's argument that Defendants should be estopped from denying coverage because they never sent Plaintiff a reservation of rights letter, is unavailing. The policy is clear in its terms and, as evidenced by the January 24, 2001 letter from Plaintiff's attorney to Kemper, Plaintiff understood the scope of coverage and reimbursement and acknowledged her responsibility to pay her attorney if the disciplinary proceedings were unfavorable to her. (Exhibit A attached to *Plaintiff's Motion for Summary Judgment*). While there is a narrow exception under Ohio law for the application of the doctrine of estoppel to an insurance contract, the doctrine does not apply to this case. Plaintiff relies on *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292 (Summit Co. 1994). There, the Plaintiff sued its liability insurer after it ceased defending a negligence claim that was commenced against Plaintiff by a third party. Plaintiff claimed that Defendant should be estopped from denying a defense. The court held:

> Waiver and estoppel should apply only in those cases where there is a clear misrepresentation of fact or when the insurer provides a defense without reserving its rights for a period sufficient to prejudice the insured's ability to conduct its own defense. Accordingly, we find that an exception to the general rule that waiver and estoppel cannot be used to extend the coverage of an insurance policy exists when the insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured, or when the insurer or its agents misrepresent the extent of coverage the insured is purchasing.

*Id.* at 299. There is no claim of clear misrepresentation, nor is there an assertion that the Defendant, through its conduct, prejudiced the Plaintiff in conducting her defense to the allegations.

Finally, the Court finds no merit to Plaintiff's argument that Defendant Kemper operates under a conflict of interest which amounts to a breach of the insurance contract. As the

Defendants point out, if Plaintiff is asserting this as a claim, it is not alleged in the complaint. For this reason alone, the Court declines to consider the merits of any such argument. Further, the Defendant, as an insurer but not a decisionmaker, could not have determined the outcome of the grievances.

In sum, the Court finds the policy clear and unambiguous in its terms. Since Plaintiff was found to have engaged in acts in her capacity as Franklin County Common Pleas Judge warranting discipline, Defendants' denial of reimbursement for attorneys' fees is supported by the policy language. Plaintiff's motion for partial summary judgment on the claim for breach of the insurance contract is denied. The Defendants' motion on the claim is granted.

The Court notes that Defendants also move for summary judgment on Plaintiff's claims for bad faith and promissory estoppel. Plaintiff's claim for bad faith is premised on the Defendants' refusal to pay a percentage of attorneys' fees associated with the dismissal of two counts of disciplinary charges. As stated above, Plaintiff's claim for a percentage of reimbursement is not supported by the plain language of the policy. Thus, the Court finds no merit to Plaintiff's bad faith claim[6].

The Court also concludes that Defendants are entitled to summary judgment on Plaintiff's promissory estoppel claim. This claim is also premised on the argument that Plaintiff is entitled to reimbursement for a percentage of attorneys' fees for the counts which were dismissed. Plaintiff points to no evidence that would demonstrate that Defendants promised to reimburse

---

[6] A claim for bad faith under Ohio law is essentially a claim that an insurer breached the duty to act in good faith in its dealings with the insured. In order to succeed on the claim, "the insurer must have acted unfairly in performing or refusing to perform its duty to provide the insured a benefit promised under the policy." *Gillette v. Estate of Gillette*, 163 Ohio App.3d 426, 432 (Franklin Co. 2005).

11

Plaintiff's attorneys' fees on a percentage basis. Moreover, such a claim for promissory estoppel would contradict the terms of the written insurance contract. Under Ohio law, courts refuse to apply the doctrine of promissory estoppel in such an instance. *See e.g., Ed Schory & Sons, Inc. v. Society National Bank*, 75 Ohio St.3d 433 (1996).

## IV.

In light of the foregoing, the Plaintiff's Motion for Partial Summary Judgment (**Doc. #11**) is **DENIED** and the Defendants' Motion for Summary Judgment (**Doc. #15**) is **GRANTED**.

The Clerk is **DIRECTED** to enter Judgment in favor of the Defendants and to dismiss this case.

**IT IS SO ORDERED.**


9-27-2006
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE